UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | CRIMINAL |
| Plaintiff, | ) | NO. 05-MC-10209-JLT |
| | ) | NO. 05-MJ-01076-JGD |
| v. | ) | |
| | ) | |
| Francoise Ngele Bundu, | ) | *Leave to file granted* |
| | ) | *January 19, 2007* |
| Defendant. | ) | |
| | ) | |

**REPLY IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS FOR VIOLATION OF THE SPEEDY TRIAL ACT**

Defendant Francoise Ngele Bundu submits this reply to the Government's Response To Defendant's Motion To Dismiss ("Response"). The government has conceded in its Response that a Speedy Trial Act violation occurred and that dismissal is required. The only remaining question is whether the dismissal should be with or without prejudice. Given the facts that mitigate the seriousness of the charged offense, the neglect by the government, the government's willful failure to comply with the requirements of the Speedy Trial Act, and the actual prejudice caused to Ms. Bundu, this case should be dismissed with prejudice.

    **A.    The Circumstances Behind the Twenty-One Month Delay in Seeking an Indictment Mandate Dismissal With Prejudice.**

The government argues that, because his admitted neglect of this case was not motivated by bad faith, his long delay should be ignored and the case dismissed without prejudice. Response at 7. This argument is not supported by the case law. *See*, *e.g.*, *United States v. Ramirez*, 973 F.3d 36, 39 (1st Cir. 1992). In *Ramirez*, the First Circuit stated that, "[e]ven though the oversight was accomplished without malice, that does not ameliorate the gravity of its effects. When a [Speedy Trial Act] violation is caused by the court or the prosecutor, it weighs in favor of granting a dismissal with prejudice." *Id.* (citing *Hastings*, 847 F.2d at 925). Similarly, in *United States v. Peppin*, 365 F. Supp. 2d 261 (N.D.N.Y. 2005), the court rejected the government's presumption that "it doesn't matter that the government ignores a case as long

as it doesn't do it for strategic purposes or with some other 'bad faith' intention" and found that such behavior "offends the [Speedy Trial] Act [and] is rejected in favor of the view that 'the mere lack of improper motive is not a sufficient excuse for the delay. Some affirmative justification must be demonstrated to warrant a dismissal without prejudice.'" *Id.* at 265 (quoting *United States v. Russo*, 741 F.2d 1264, 1267 (11th Cir. 1984)). In *United States v. Giambrone*, 920 F.2d 176 (2d Cir. 1990), the court noted that "[w]ith respect to the circumstances leading to the dismissal . . ., the court may properly take into account a demonstrably lackadaisical attitude on the part of the government attorney in charge of the case . . . ." *Id.* at 180. *Accord United States v. Martinez*, 75 F. Supp. 2d 360, 365 (D.N.J. 1999) (dismissing case with prejudice because "[a]lthough there is no showing of bad faith, neither is this just a case of mere inadvertence or isolated mistake").

The First Circuit has stated that "the appropriateness of barring reprosecution increases in relatively direct proportion to the degree of culpability which attaches." *Hastings*, 847 F.2d at 925 (citations omitted). In *Hastings*, the First Circuit articulated three levels of actions to which certain weight for or against dismissal with prejudice attaches. *Id.* Weighing heavily in favor of dismissal with prejudice are cases in which the "delay . . . results either from intentional noncompliance with the Act or from actions designed to gain unfair prosecutorial advantage." *Id.* (citations omitted). At the second level and "[c]losely allied to [the first level] . . . are recurrent shortcomings." *Id.* This second level is identified "by a pattern of governmental inattention." *Id.* The last level is when there is an "isolated instance of administrative oversight," which "weighs less heavily in favor of banning reprosecution." *Id.*

This case clearly falls into the first and second categories. In fact, this case is very similar to *Giambrone*, where the court dismissed the case with prejudice where "the government's speedy trial attitude in the first prosecution [was] 'extremely lax.' . . . [there was a] long lapse of time between October 4, 1988 and early December; in that more than two-month period apparently nothing happened, and the government made no effort to have that time excluded on any basis permissible under the Act." 920 F.2d at 176, 181. Those facts are

analogous to the lax approach the government has taken here. Similarly, in *Peppin*, the court dismissed the case with prejudice where "[t]here was no ongoing investigation and no communication with counsel to demonstrate anything but a truly neglectful attitude." 365 F. Supp. 2d at 266. Again, the facts here fall squarely within *Giambrone* and *Peppin* because there is no evidence of any government investigation over a period of nine months, no effort to exclude any time under the Speedy Trial Act, and no effort to return defense counsel's calls and letters.

Here, even accounting for excludable time, the government has failed to seek an indictment or an exclusion of time since March of last year, a fact that the government admits. *See* Response at 7. To have avoided a Speedy Trial Act violation, the government would have needed to obtain at least nine additional exclusions of the 30-day indictment requirement under the Act. Clearly the government understood, as its opposition concedes, that it needed to continue to exclude time in order to avoid a violation of the Act. It had made such motions previously, but simply ceased doing so.

Moreover, in addition to the government's repeated failures to comply with the Speedy Trial Act, the government has failed to pay attention to this case in other substantive ways. First and foremost, as acknowledged by the government, the prosecutor has not even communicated with defense counsel since June 2006. Second, serious questions exist as to whether the government has actually conducted any significant investigation.[1] Third, the government even

---

[1] Although the government states at various points in its brief that it continued its investigation, the government has offered no affidavit to support its assertion as required by Local Rule 7.1. *See United States v. Mancuso*, 302 F. Supp. 2d 23, 30 (E.D.N.Y. 2004) (treating government's proffer that defense counsel agreed not to raise any Speedy Trial Act issues as unsubstantiated when the proffer was not accompanied by any evidence). Nor has defense counsel received any evidence of an ongoing investigation by the government. All evidence points to the conclusion that the government has simply ignored this case for at least the last seven months.

For example, defense counsel indicated to the government during a meeting in May 2006 that a key piece of evidence was located in the defendant's file maintained by Citizenship and Immigration Services ("CIS"). This document provides further proof of defendant's affirmative defense—namely, that the defendant's husband lied to CIS in an effort to get her deported from the country. *See* Tab 1 (letter from CIS to defendant indicating that "permanent resident status [was] terminated" and that she was "subject to immediate deportation"). Back in March 2006, defense counsel attempted to obtain this document by making a Freedom of Information Act request. However, as of November 2, 2006, this request was still number 54,024 in line for a response by CIS. Knowing the lengthy response times, defense counsel asked the government in May 2006 whether it might be able to obtain a

failed to timely respond to defendant's motion to dismiss within the time period mandated by Local Rule 7.1. In *United States v. Martinez*, 75 F. Supp. 2d 360 (D.N.J. 1999), the court dismissed the case with prejudice where a pattern of neglect was further demonstrated by the failure of the government to answer defendant's motion to dismiss the indictment on the date it was due, even in absence of bad faith. *Id.* at 366. The Court should do the same here.

All of this evidence supports the finding that the delay here is inexcusable under the Speedy Trial Act, even in the absence of bad faith, and that dismissal should be with prejudice. The government's actions are clearly <u>not</u> "an isolated instance of administrative oversight," but rather—at best—a willful and repeated "pattern of government inattention." *See Hastings*, 847 F.2d at 925. Indeed, the government's cavalier attitude concerning its repeated failure to comply with the Speedy Trial Act, as evidenced by its knowing and, one can only say, <u>willful</u> failure to obtain any further extensions under the Speedy Trial Act, and its utter failure even to return telephone calls and letters of defense counsel, is tantamount to intent, placing this case in the category the First Circuit has stated "weighs heavily in favor of dismissal with prejudice." *See id.* Under either *Hastings* category, this factor weighs strongly in favor of dismissal with prejudice in this case.

**B.     The Seriousness of the Offense Factor Warrants Dismissal With Prejudice.**

Although it sometimes might be the case that there is a societal interest in not dismissing cases involving serious crimes, Response at 6-7 (citing *United States v. Hastings*, 847 F.2d 920, 925 (1st Cir. 1988)), this is <u>not</u> one of those cases. Unlike the defendants in the two cases cited by the government in its opposition, who were charged with seven counts of possession of cocaine and methamphetamine with intent to distribute and one count of possession of a firearm during the commission of a felony, *Hastings*, 847 F.2d at 920, and with conspiracy to import

---

quicker response for this document, and it is defense counsel's recollection that the government indicated he would make an effort to do so. However, defense counsel has heard nothing from the government with regard to this request. For these reasons, as well as the absence of any other information or documents having been shared with the defendant, the government's claim to an ongoing investigation is highly suspect.

cocaine into the United States, *United States v. Barnes*, 159 F.3d 4, 7 (1st Cir. 1998), Ms. Bundu is not a dangerous drug dealer, a violent offender, or a "hardened criminal" by any stretch of the imagination.[2] To the contrary, Francoise Bundu is simply the mother of two young children who sought to protect herself from the domestic violence inflicted upon her by her now former husband since the day they were married, which violence continued during her pregnancy and even after her children were born. Ms. Bundu is a college-educated woman whose only contact with the criminal justice system has been this case.

As a result of Ms. Bundu's flight from domestic violence in January 2004, the government charged Ms. Bundu with international parental kidnapping in violation of 18 U.S.C. §1204. The statute, by its own terms, recognizes that this is not a "serious" offense in at least two ways. First, the statute authorizes limiting punishment upon conviction to a fine (of no minimum amount) and does <u>not</u> require prison time even if convicted. 18 U.S.C. §1204. *Compare United States v. Peppin*, 365 F. Supp. 2d 261, 264 (N.D.N.Y. 2005) (possession of narcotics with intent to distribute carries a minimum five year prison sentence and is considered a serious charge for purposes of the Speedy Trial Act); *United State v. Martinez*, 268 F. Supp. 2d 70, 74 (D. Mass. 2003) (holding that drug conspiracy and distribution charges carrying "heavy penalties of twenty years to life in prison . . . are very serious"). Second, the statute provides three affirmative defenses, one of which is "fleeing an incidence or pattern of domestic violence." 18 U.S.C. §1204(c)(2). The presence of numerous facts here that support this affirmative defense, which facts were provided in detail to the government, mitigates the seriousness of the offense on the facts of this case.[3]

---

[2] The government cited to three cases in its brief: the two above-mentioned cases and *United States v. Bruder*, 945 F.2d 167 (7th Cir. 1991). The government cited *Bruder* for the proposition that parental kidnapping is a "serious offense that goes to the core of the fundamental cornerstone of our society, the family, and unquestionably implicates important societal interests." Response at 7. However, defense counsel has been unable to find any support in *Bruder* for the proposition stated by the government. *Bruder* is a sentencing case in which the court grappled with grouping of offenses (felonious possession of a firearm and possession of an unregistered firearm) for sentencing purposes. It has nothing to do with the Speedy Trial Act, parental kidnapping, or "the family."

[3] When defense counsel met with the government in May 2006, they provided the prosecutor with a binder containing evidence supporting the domestic violence defense, including police reports and relevant excerpts from

A review of cases dealing with the Speedy Trial Act supports this conclusion. When circumstances warrant, courts look beyond the offense charged to its particular circumstances in order to determine the level of actual seriousness. For example, in *United States v. Bilotta*, 645 F. Supp. 369 (E.D.N.Y. 1986), the court dismissed a case with prejudice, stating that, although "the Court does not wish to deprecate the charge of exporting military and electronic equipment without a license, especially when the target countries [Libya] are hostile to our own . . . [i]f Bilotta's activities were in fact as dangerous as the government now claims, however, it seems unlikely that it would have waited eighteen months to indict him." *Id.* at 373. Similarly, in *United States v. Caparella*, 716 F.2d 976 (2d Cir. 1983), the court dismissed a case with prejudice, stating that "we do not consider appellant's conduct [felony mail theft] a 'serious' crime, absent exacerbating circumstances such as violence, which is not here present. Congress viewed the crime originally charged as the lowest order of felony." *Id.* at 977, 980. *See also United States v. Angelini*, 553 F. Supp. 367, 370 (D. Mass. 1982) (dismissing case with prejudice and finding "the seriousness of defendant's alleged conduct [possession and distribution of methaqualone] is a neutral factor for the issue of dismissal with or without prejudice. Although the charge is serious, the government's proof was, and presumably remains, predicated on a relatively small quantity [of narcotics, as acknowledged by the government]."), *rev'd on other grounds*, 678 F.2d 380 (1st Cir. 1982). Here, even more so than the cases cited, the statute at issue warrants the Court's consideration of the absence of mandatory jail time and facts regarding the affirmative defense of domestic violence as factors that reduce the seriousness of the parental kidnapping charge here.

It is noteworthy that the government's opposition brief does not dispute that Ms. Bundu was the victim of domestic violence at the hands of her husband. Further, several mis-statements

---

Ms. Bundu's 2006 deposition in civil child custody proceedings. A copy of this binder will be provided to the Court at the hearing on this matter.

and the omission of key facts by the government warrant further response.[4] For example, the court order granting Ms. Bundu leave to take the children out of the country did not grant Mr. Bundu "essentially unlimited time with the children between January 14th and the end of the month" or require that "she return to the United States by March 1st." Response at 2-3. In fact, Ms. Bundu had court approval to remove the children from the country when she did. Additionally, Ms. Bundu informed Mr. Bundu (through counsel) of her whereabouts in the Democratic Republic of the Congo ("DRC") on April 19, 2004. Further, Ms. Bundu registered the children with the United States Embassy shortly after she arrived in the DRC, thereby disclosing their location to the United States government. Because of this registration, the FBI and the State Department knew at all times where the children were residing in the DRC. Why Mr. Bundu allegedly incurred over $200,000 (and whether he in fact did so) to locate his children—who were living at their grandparents' house in the same town where Mr. Bundu was raised and many of his family members still live—is unknown, but it is not due to Ms. Bundu's concealment of their whereabouts.[5]

The evidence of domestic violence presented to the government was substantial and includes the following:

- In March 2000, Mr. Bundu and Mrs. Bundu had an argument over going to see a fertility doctor. While Ms. Bundu was showering behind a locked door, Mr. Bundu picked the bathroom lock and began yelling at Ms. Bundu that she should leave <u>his</u> house. He shoved her—completely naked—out of the apartment and into the public hallway, and shut the door, leaving her out there. After Ms. Bundu banged on the door and screamed for help, Mr. Bundu eventually opened the door and roughly pulled Ms. Bundu back inside. As he was doing this, Ms. Bundu fell and cut her leg, drawing blood.

---

[4] On this motion to dismiss, Ms. Bundu does not intend to correct every factual error made by the government in its opposition. However, certain "facts" alleged by the government must be corrected so that the seriousness of the charge may properly be evaluated under the Speedy Trial Act.

[5] Furthermore, contrary to the government's assertions, Ms. Bundu did not intend to sneak back into the United States to attend an immigration proceeding. Quite the opposite—she declared her intent to bring the children back to the United States with her to the U.S. Embassy in the DRC and even (unsuccessfully) sought the Embassy's assistance in obtaining a visa to pass through Belgium on the return trip to the United States, which would have allowed her to bring the children back to the United States at that time. When she was unable to obtain this visa, she was forced to travel via a more difficult route, and therefore traveled alone.

- In December 2000, Ms. Bundu had another argument with Mr. Bundu, and she slept in a separate bedroom afterward. The next day, as Ms. Bundu was changing in her own bedroom, she closed the door. Mr. Bundu threatened her, "Don't you dare close this door!" She ignored him and closed it. He opened the door, came into the room, and pushed her onto the bed. He yelled at her. He fought with her, breaking a lamp. He kicked her in the ribs. He pulled her up by her hair and told her to leave the house. After this incident, she told Mr. Bundu's mother and brother what had happened. Instead of helping Ms. Bundu, they made Ms. Bundu feel like it was all her fault, and they made her make dinner to apologize. They told her not to go to the police or to a social worker, saying that they just divide families.

- In October 2003, one week before Ms. Bundu's due date, Ms. Bundu was out with Mr. Bundu and his daughter to buy shoes that would fit her now swollen feet. The daughter was having difficulty operating some audio equipment in the car, and Mr. Bundu instructed Ms. Bundu to read the owner's manual. Ms. Bundu declined, citing exhaustion. Mr. Bundu got angry and yelled at her. He slapped her and shoved her head against the car window. Ms. Bundu fled from the car. This occurred when she was nine months pregnant with twins.

- In December 2003, Ms. Bundu finally got a restraining order against her husband. He then improperly used a third party to contact her to persuade her to drop the restraining order. After she refused, he withdrew his support for Ms. Bundu's immigration application, apparently falsely stating that she married him only to obtain resident status. The result of this false effort by Mr. Bundu was a letter from the Department of Homeland Security to Ms. Bundu dated January 6, 2004 (just before she fled), that she was "subject to immediate deportation."

These are just four incidents outlined in detail in the letter attached as Tab 4 to defendant's moving brief, which is incorporated herein by reference. In that letter, these references were supported by documents and Ms. Bundu's deposition testimony, which were provided to the government. For a full understanding of the facts and points presented to the government, the Court is respectfully directed to that detailed submission. The facts surrounding Ms. Bundu's affirmative defense, together with the fact that the government itself has not treated the offense as "serious" given its failure after more than eighteen months to indict the case demonstrate that, as applied here, the "seriousness" factor is not met and the charge should be dismissed with prejudice under the Speedy Trial Act.

## C. Ms. Bundu Has Suffered Substantial Prejudice.

The government's opposition brief on the prejudice suffered by Ms. Bundu is wrong on both the facts and the law. The government argues that "the defendant has not cited any case law, and the government has not been able to find any, to support the proposition that the defendant's present status—on pre-trial release without a bracelet and free to work, reflect actual prejudice." Response at 9. To the contrary, in her moving brief, defendant cited the Supreme Court case of *United States v. Taylor*, 487 U.S. 326 (1988). In that case, the Supreme Court recognized that

> [i]nordinate delay between public charge and trial, ... wholly aside from possible prejudice to a defense on the merits, may 'seriously interfere with the defendant's liberty', whether he is free on bail or not, and . . . may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and friends.'

*Taylor*, 487 U.S. at 340-41 (quoting *Barker v. Wingo*, 407 U.S. 514, 527 (1972) (White, J., concurring) (additional citation omitted)). The Supreme Court concluded that, "[t]he longer the delay, the greater the presumptive or actual prejudice to defendant, in terms of his ability to prepare for trial <u>or the restrictions on his liberty</u>." *Id.* at 340 (emphasis added).

This approach has been endorsed and applied by the First Circuit and other courts. For example, in *Hastings*, the First Circuit noted that "[t]o some extent, then, a lengthy delay can be seen as a proxy for direct proof of actual prejudice." 847 F.2d at 929. Indeed, this case is analogous to *United States v. Clymer*, 25 F.3d 824 (9th Cir. 1994). As the court stated in that case:

> Clymer remained under the cloud of a pending indictment for 522 days—nearly one and a half years. Even giving the government the benefit of every doubt, about five months of this period was not excludable under the Act. Were we forced to decide how much of the delay is actually excludable, we might conclude that the non-excludable delay is considerably more than that. However, even a delay of five months strongly implicates the serious concerns articulated by Justice White in his concurring opinion in *Barker v. Wingo*, 407 U.S. 514, . . . (1972) [as stated above].

*Clymer*, 25 F.3d at 832.

Like Clymer, Ms. Bundu has been under the threat of indictment since April 5, 2005—over one and a half years. Even taking into account excludable time, more than nine months (270 days) are not excludable under the Act. These facts strongly demonstrate prejudice to Ms. Bundu in terms of her liberty interest and the shame and anxiety she has suffered.

Ms. Bundu's case is similar to *Clymer* in other respects, as well. Although Ms. Bundu was not incarcerated for the entire pre-trial period as Clymer was, she was incarcerated for 30 days, was under house arrest for over two months, was required to wear an electronic monitoring bracelet for almost an entire year, and still must report twice a week to Pre-Trial Services. One tangible result of this has been Ms. Bundu's inability first to seek and later to accept a job that would accommodate her obligations to Pre-Trial Services. This clearly constitutes "significant actual prejudice to [her] liberty." *See Clymer*, 25 F.3d at 832; *Peppin*, 365 F. Supp. 2d at 267 ("Besides the uncertainty and anxiety which he and his family have felt since his arrest, the pretrial limitations on his travel have led to lost income and financial hardship" given that he was a long distance truck driver).

More importantly, however, in terms of the prejudice from the delay is the fact that prosecution of this case at this point in time will reopen a healing wound. Much has happened in the more than eighteen months since Ms. Bundu's arrest, including the state court's resolution of all pending civil matters relating to Ms. Bundu's divorce and the child custody matters. Those matters proceeded and were resolved in 2005 and 2006—all during the time that this case has been pending. The passage of time has significantly changed the circumstances. Pitting husband against wife, father against mother, back in 2005 would have been bad enough. In the time that has passed, a civil court has granted the parties a divorce, and approved a settlement of all child support, visitation, and custody issues. The two young children are learning to live with each parent under the joint custody arrangement. All parties involved in this case have moved far beyond where they were when Ms. Bundu was arrested in April 2005. Yet the prosecutor who delayed for so long—close to <u>two</u> <u>years</u>—now asks for another chance to indict a single mother who is seeking nothing more than to move forward from her broken marriage, care for her two

children, and find a job so she can work to support them all. Reprosecution at this point would simply serve no purpose other than to rip apart a family that is well on its way to leaving a sad chapter in its history in the past.

## CONCLUSION

For the foregoing reasons, Ms. Bundu respectfully requests that the Court dismiss the charge pending against her with prejudice.

**Francoise Ngele Bundu,**

By her attorney,

/s/ Andrew C. Phelan
Andrew C. Phelan, BBO #643160
**BINGHAM MCCUTCHEN LLP**
150 Federal Street
Boston, MA 02110-1726
(617) 951-8000

Dated: January 19, 2007

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 19, 2007.

/s/ Andrew C. Phelan
Andrew C. Phelan

# TAB 1

DEPARTMENT OF HOMELAND SECURITY
UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICESS
John F. Kennedy Building
Boston, Massachusetts 02203

Date: JAN 0 6 2004

Refer to this File number: A 076 964 955

Francoise Bunda
402 Rindge Avenue, Apt. 10 H
Cambridge, Massachusetts 02140

### NOTICE OF TERMINATION OF CONDITIONAL STATUS

Reference is made to the Joint Petition to Remove Conditions on Residence filed by you and your petitioning spouse, Benoit Bunda, filed on January 15, 2002, at St. Albans, Vermont. The petition was forwarded to the Boston office for evaluation. After consideration and review it is the decision of the Service that your petition be denied.

Matter of Mendes, 20 I&N Dec. 833 (BIA 1994), states that where the parties of a marriage have jointly filed a Petition to Remove Conditions on Residence but one of the parties withdraws support from the petition, the joint petition shall be considered withdrawn. On December 18, 2003, the Service received written notice from your petitioning spouse effectively withdrawing the aforementioned joint petition. In the written statement from your petitioning spouse, your petitioning spouse claims that you lied and deceived him all in an effort to obtain your alien registration card. Therefore, in accordance with Section 216(c)(2)(A)(i) of the Immigration and Nationality Act (the Act) your permanent resident status is terminated as of January 14, 2003.

Section 216(c)(2)(B) of the Act allows that you may request review of the determination in removal proceedings. In this case, the burden of proof is on you to establish compliance with the conditions of Section 216 of the Act. If you desire a review of this decision in removal proceedings, you have the right to representation at no expense to the government. You should present any affidavits or other evidence that you desire to have considered at said hearing. If any documents are in a foreign language, you must bring the original document and a certified translation. If you wish to have witness testimony, you must arrange to have such witnesses present at the hearing.

Sincerely,

Denis C. Riordan
Interim Director

cc: ☐

#### See reverse for important information

**Warning:** Any statement you make may be used against you in removal proceedings.

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are under removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 3.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this Notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents which you desire to have considered in connection with your case. If any document is in a foreign language, you must bring the original and a certified English translation of the document. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing.

At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear and that you are inadmissible or deportable on the charges contained in the Notice to Appear. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government.

You will be advised by the immigration judge before whom you appear, of any relief from removal for which you may appear eligible including the privilege of departing voluntarily. You will be given a reasonable opportunity to make any such application to the immigration judge.

**Failure to appear:** You are required to provide the INS, in writing, with your full mailing address and telephone number. You must notify the Immigration Court immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the INS.

#### Request for Prompt Hearing

To expedite a determination in my case, I request an immediate hearing. I waive my right to have a 10-day period prior to appearing before an immigration judge.

Before: _____

(Signature and Title of INS Officer)

_____
(Signature of Respondent)

Date: _____

#### Certificate of Service
JAN 0 6 2004

This Notice to Appear was served on the respondent by me on _____ , in the following manner and in compliance with section 239(a)(1)(F) of the Act:
(Date)

☐ in person   ☐ by certified mail, return receipt requested   ☒ by regular mail

☒ Attached is a list of organizations and attorneys which provide free legal services.

The alien was provided oral notice in the _____ language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

Robert A. Pfeifer, DAO

Department of Justice
tigration and Naturalization Service

## Notice to Appear

moval proceedings under section 240 of the Immigration and Nationality Act

File No: A76 964 955

he Matter of:

pondent: Francoise                                      Bundu

Rindge Avenue, Apt. 10 H
nbridge,                                                                MA   02140        (617) 864-0475
(Number, street, city, state and ZIP code)                                              (Area code and phone number)

1. You are an arriving alien.
2. You are an alien present in the United States who has not been admitted or paroled.
3. You have been admitted to the United States, but are deportable for the reasons stated below.

Service alleges that you:

ou are not a citizen or national of the United States;

ou are a native of Congo and a citizen of Congo;

ou were admitted to the United States at Boston, Massachusetts on or about April 25, 1995 as a nonimmigrant F-1 Student;

n January 13, 2000, your status was adjusted to that of a permanent resident on a conditional basis based upon your marriage to :noit Bundu;

our status was terminated on January 14, 2002, because of Section 216(c)(2)(A)(ii) of the Immigration and Nationality Act.

basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following
ion(s) of law:

on 237(a)(1)(D)(i) of the of the Immigration and Nationality Act (Act), as amended, in that after admission or adjustment as an alien lly admitted for permanent residence on a conditional basis under section 216 or 216A of the Act your status was terminated under respective section.

This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution.

Section 235(b)(1) order was vacated pursuant to: ☐ 8 CFR 208.30(f)(2)  ☐ 8 CFR 235.3(b)(5)(iv)

U ARE ORDERED to appear before an immigration judge of the United States Department of Justice at: EOIR, Room 320, K Federal Building, Government Center, Boston, MA 02203.
(Complete Address of Immigration Court, Including Room Number, if any)

___date and time to be set___ at ___by I. J.___ to show why you should not be removed from the United States based on the
     (Date)                          (Time)
rge(s) set forth above.

JAN 0 6 2004
                                                          _____
                                                          (Signature and Title of Issuing Officer)

e: _____
                                                          Boston, Massachusetts
                                                          (City and State)

See reverse for important information